## Case No. 5,707.

### GRATTAN v. APPLETON et al.

[3 Story, 755; 8 Law Rep. 116.] [1]

Circuit Court, D. Massachusetts.    May Term, 1845.

LETTERS TESTAMENTARY—DONATIO CAUSA MORTIS —DOMICIL—PERSONAL PROPERTY—COSTS.

1. Where A, being domiciled in New Brunswick, wrote certain letters to B, desiring him, on the death of A, to make a certain distribution of the property belonging to A in the hands of B; and after A's decease (who died insolvent), C, his administrator, brought the present suit to recover the money of B,—it was *held*, that the letters were testamentary in their character, but that, as they were not in conformity with the law of A's domicil, by which they were to be governed, they did not constitute a valid will; and that. had they been valid as a will, the legatees could have obtained no benefit therefrom, on account of the insolvency of A.

[Cited in Lee v. Luther, Case No. 8,196; McKinnon v. McKinnon, 46 Fed. 722.]

[Cited in Manuel v. Manuel, 13 Ohio St. 463.]

2. To constitute a donatio causa mortis, there must have been a transfer of property in expectation of death from an existing illness, the donation depending on the condition of death from such illness. But any instrument may constitute a will, which appears to be intended to operate after the death of the party making it, and not before.

[Quoted in Smith v. Dorsey, 38 Ind. 457.    Cited in Cutting v. Gilman, 41 N. H. 152; Craig v. Kittredge, 46 N. H. 58.]

3. The law of the place of the testator's domicil governs in relation to a will of personal property, although the will be made in another state or country, where a different law prevails.

4. In the present case, as the defendant was acting bona fide. and was in no default, he was not bound to pay interest on the assets in his hands, unless he had made interest thereon, and he was entitled to costs.    As the questions in this case were new and important, and were

1 [Reported by William W. Story, Esq.    8 Law Rep. 116, contains only a partial report.]

proper for discussion, each party should bear his own costs, except the principal defendant.

Bill in equity.    The bill in substance stated, that Sir John Caldwell died at the city of Boston, on or about the eighth day of October, A. D. 1842, and that the plaintiff [Thomas C. Grattan], on the twenty-second day of April, A. D. 1844, was duly appointed administrator of the estate of the said Sir John, within the commonwealth aforesaid, and has given bonds according to law for the faithful performance of his duties as such. That the said Sir John Caldwell died insolvent; that on or about the twenty-first day of April, A. D. 1841, the said Sir John Caldwell assigned to the said William Appleton twenty shares in the Nashua Manufacturing Company, and at the same time received from the said Appleton seven thousand dollars, as an advance on account of the said shares.    That on or about the same time, the said Sir John addressed to the said Appleton a letter of instructions with regard to the said shares, which was duly received by the said Appleton, in the following words: "Boston, 21st April, 1841.    Mr. William Appleton,—Dear Sir: I am desirous of getting an advance on twenty shares in the Nashua Manufacturing Company, of seven thousand dollars.    Will you receive the shares, make the advance,—sell the shares at such time as you deem expedient—my wish would be to have them held with a hope of getting six hundred dollars per share for them; but you will please dispose of them within one year, at the market price—so many as will reimburse your advance, should I not before repay your advance.    Yours truly, John Caldwell.    Boston, April 21, 1841.    Received of William Appleton seven thousand dollars as advance on twenty shares in the Nashua Company, transferred to him.    John Caldwell."    That on or about the fourteenth day of January, A. D. 1842, the said Sir John Caldwell addressed to the said Appleton a letter, which was duly received by the said Appleton, in the following words: "Boston, 14th January, 1842.    William Appleton, Esq., Boston.    My Dear Sir: I beg to trespass on your friendship, by requesting, that in the event of my death occurring before I have the pleasure of seeing you again, that you will be so kind as to remit the proceeds of treasury bill for five hundred dollars, now in your hands, in a bill of exchange, and remit the same to E. H. Chapman, Esq., Leaden-Hall street, London. for the use of Miss Johnson, who is well known to him.    I remain, dear sir, your very truly obliged friend and servant, John Caldwell."    That the said letter enclosed the two following letters: "Boston, 25th April, 1841.    William Appleton, Esq., Boston.    My Dear Sir: May I request the favor of your keeping the inclosed until you hear of my death, and then open it, as it conveys my wishes with respect to the disposition of what balance of mine may be in your hands.    Before that event takes place.

I hope many times to have the pleasure of seeing you; it is, however, only right, to be prepared for an event which, sooner or later, must happen to us all. With many thanks for your late kindness, and apologizing for thus far troubling you. believe me, my dear sir, your very faithful and obliged friend, John Caldwell." "Boston, 25th April, 1841. William Appleton, Esq., Boston: My wish is, that whatever balance Mr. Appleton may find in his hands after disposing of the Nashua stock, should be equally divided; one half to go to Mrs. Jacob Hathorne, of Dracutt, near Boston, now of Lowell, and the other remitted to Miss Eliza. Johnson. Information can be obtained respecting the latter by inquiring of Mr. E. H. Chapman, merchant, Leaden-Hall street, London. John Caldwell." That the last letter was sealed and endorsed as follows: "William Appleton, Esq., is requested to take charge of this packet in his safe, until he either sees or hears from Sir John Caldwell, or receives authentic intelligence of his death, when Sir John Caldwell begs he will be so good as to open it, and comply with the request therein contained. Boston, 24th February, 1842." That at some time after the death of the said Sir John, the said Appleton opened the said letter and the several enclosures therein. That the several sums of money, amounting in all to a large sum, to wit: three thousand dollars, which the said Appleton had in his possession at the time of the death of the said Sir John, and belonging to the said Sir John, rightly belong to the plaintiff as administrator of his estate; and that the said Appleton is justly bound to pay the same to the plaintiff, with interest thereon for their detention. And the plaintiff well hoped, that the said Appleton would pay the same, but the said Appleton pretends, that he cannot with safety pay the same, on account of certain pretended claims made in pursuance of the letters herein before recited, by the said Jacob H. Hathorne, and his said wife, and also by one Eliza Johnson, of Boulogne, near London, in the kingdom of Great Britain and Ireland, spinster, a person out of the jurisdiction of the court, and on this account alone, not a party to this bill; and under this pretence, though often requested, the said Appleton refuses to pay the same. The bill prays, that the said Appleton may be decreed to pay to the plaintiff the said sum of three thousand dollars, with interest thereon, for the unjust detention thereof; that the said pretended claims of the said Hathorne and wife, and of the said Johnson, may be decreed to be without force and virtue; and that the plaintiff may have such further relief in the premises, as the nature of the case may require, and as may be agreeable to equity and good conscience.

The answer of William Appleton stated, that he has been informed and believes it to be true, that the said Sir John Caldwell, deceased, at Boston, on or about the eighth day of October, A. D. 1842, and that the said complainant has been appointed administrator of the estate of the said deceased; but for greater certainty, this defendant prays that the said complainant may be held to produce his letters of administration, or other proper proof, if deemed material. That on or about the twenty-first day of April, A. D. 1841, the deceased borrowed of this defendant the sum of seven thousand dollars, upon interest, and as security for the payment thereof, transferred to this defendant twenty shares of the stock of the Nashua Manufacturing Company, with the right to sell the same, as appears by his letter and receipt of that date, as set forth in the said bill of complaint. And afterward the said deceased wrote the two letters set forth in the said bill of complaint, bearing date the twenty-fifth day of April, A. D. 1841; but at what time the same were written this defendant has no knowledge except from the dates thereof. And afterwards said deceased deposited in the hands of this defendant a certain treasury note for the sum of five hundred dollars, which was paid on or about the tenth day of August, A. D. 1843, and on account of which and the interest thereon, this defendant then received the sum of five hundred and sixty-nine dollars and fifty-eight cents: and afterwards this defendant received the letter set forth in the said bill, dated the fourteenth day of January, A. D. 1842, respecting the disposition to be made of the proceeds of the said bill, which letter enclosed the said two letters bearing date the twenty-fifth day of April, A. D. 1841, and which last described letter was sealed, endorsed, and directed as in the said bill is set forth, and which with the letters enclosed was opened by this defendant after receiving notice of the decease of the said Sir John. That at different times, at the request of the said deceased, he advanced to him other sums of money, relying for his reimbursement upon the securities aforesaid, and that he has received certain dividends upon the said shares, and that in pursuance of the power to him granted he has sold said shares for his reimbursement, and has received the proceeds, and that after deducting from such dividends and sales, and the proceeds of the said treasury note, the amount of his advances with interest and charges, there remained in his hands on the first day of January last, the sum of twenty-eight hundred and eighty-two dollars eighty-one cents. And that he has always been ready and desirous to pay over the said balance to such person or persons as might be lawfully entitled to receive the same; and that after the decease of the said Sir John, and before the appointment of the complainant, to wit, on the tenth day of August, A. D. 1843, he notified Sir Henry Caldwell, the son and heir of the said deceased, of the existence of the property aforesaid,

and of the disposition made or intended to be made thereof by the said deceased, and requested him to notify the executors or administrators, if any, thereof, and afterwards this defendant notified the said Eliza Johnson and Jacob H. Hathorne, and his said wife thereof. And that the personl representatives of the said deceased claim the said sum in his hands as a part and parcel of the estate of the said deceased, and that he has been notified by the said Eliza Johnson and the said Jacob H. Hathorne and his said wife not to pay over the same to the said representatives, but to hold it on their account, but that neither of the said parties have tendered him any indemnity in the premises. And the defendant submits to this honorable court what interest the said complainant is entitled to in the sum of money in his hands as aforesaid, and says, that he is willing and ready to account as this honorable court shall direct respecting the same, having all just and reasonable allowances made, which he is entitled to; and in all other respects this defendant submits to act as the court shall direct, upon being indemnified his expenses and costs of suit.

The answer of Jacob H. Hathorne and Julia his wife stated that they believe that the statements set forth in the complainant's bill of complaint are true. That they believe that the statements set forth in the answer of William Appleton, one of the defendants, are also true. That the said Jacob and his wife have claimed and do claim of the said Appleton, the payment of the amount now in his hands, and which the said Sir John Caldwell directed him to pay to the said Mrs. Hathorne, the letter and direction of said Caldwell, constituting in law or in equity an assignment of said amount, which is valid and effectual as against the complainant and other claimants. That the said Julia H. Hathorne is the daughter of the said Sir John Caldwell, by Mrs. Harriet Usher; and has always been, during his life, treated by him with the tenderest affection. And that the amount thus directed to be paid to her, was intended by him to be a last proof of paternal affection: and the assignment thereof, has in law been founded on a good and legal consideration, as they believe.

The following agreement was also made by the parties: "It is agreed by the parties in the above entitled cause, that the legal domicil of Sir John Caldwell, at the time of his death, was in the province of New Brunswick. It is further agreed, as a fact in the case, that the law governing wills in the province of New Brunswick, is an act entitled as follows: 'An act for the amendment of the law with respect to wills, passed March 9, 1838;' and that the said act is to be found among the 'Acts of the General Assembly of Her Majesty's Province of New Brunswick, passed in the year 1838,' c. 9, p. 56, which collection of acts is to be found in the law

library of Harvard University, reference to which is hereby made."

C. Sumner, for plaintiff.

F. C. Loring, for defendant William Appleton.

William Whiting, for defendants Hathorne and wife.

STORY, Circuit Justice. It is agreed by the parties, that, at the time of his death, Sir John Caldwell had his legal domicil in the province of New Brunswick; and, indeed, there is no doubt, that he was at that time, and for many years before, and probably from his birth, a subject of the sovereign of the United Kingdom of Great Britain and Ireland. His residence in Boston was merely for temporary purposes. It is further agreed between the parties, that the law governing wills in the province of New Brunswick is an act entitled "An act for the amendment of the law with respect to wills," passed on the 9th of March, 1838 (Act 1837–38, 1 Vict. c. 9), which is now before me in the printed laws of New Brunswick, and it is in its main provisions a transcript of the act of the British parliament of 1 Vict. c. 26. By the provincial statute, it is expressly enacted, "that no will shall be valid, unless it shall be in writing and executed in manner hereinafter mentioned; that is to say, it shall be signed at the foot or end thereof by the testator or by some other person in his presence and by his direction; and such signature shall be made or acknowledged by the testator in the presence of two or more witnesses present at the same time, and such witnesses shall attest and shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary." Now this enactment is, in its terms, equally applicable to all wills whether of personal estate or of real estate or of both. And it is plain, that the letters of Sir John Caldwell, stated in the bill and admitted by the answers, if they constitute a testamentary disposition of the property therein mentioned, are void under the statute of the province, as not being executed according to the provisions of that statute, if that statute constitutes the governing rule.

Two questions therefore arise: (1) Whether these letters constitute in point of law a testamentary disposition by Sir John Caldwell. (2) If they do, then, whether the law of the province constitutes the rule, by which they are to be judged as to their interpretation and validity. In respect to the first question, it is manifest, that these letters are susceptible of but three modes of interpretation as to their object and effect. They constituted a disposition of the property therein mentioned, either by way of gift or by way of donation mortis causa, or by way of testament. In the first place, they cannot be construed as a gift inter vivos, because they were to have effect only in case of the death of Sir John Caldwell, were revoked by him in his life time, and there was

no delivery or transfer either actual or constructive to the donees. See 2 Bl. Comm. 441; Vin. Abr. tit. "Gift," A. In the next place, they cannot be construed as a donation mortis causa—for all the essential ingredients of such a mortuary donation are wanting. There was no delivery or transfer of the property. The donation was not in any illness of Sir John, or in expectation of death from any existing illness; and it was not made to depend upon the condition of his death by any disorder or illness then existing. Now these are indispensable to the validity, and indeed constitute the essence of a donation mortis causa. The cases on this subject will be found generally collected in 1 Story, Eq. Jur. §§ 606, 607; and in Mr. Williams' excellent Treatise on the Law of Executors and Administrators (volume 1, Ed. 1838, pt. 2, bk. 2, c. 2, § 4, pp. 544–554). The judgment of Lord Eldon in the case of Duffield v. Elwes in the house of lords, 1 Bligh (N. S.) 497, 527–530, contains a very full and accurate review of the whole doctrine, and completely disposes of the point, that these letters in no just sense constitute a donation mortis causa. See, also, Tate v. Hillbert, 2 Ves. Jr. 111, 118, 119. The letters must then be treated as in their nature, scope and object testamentary, or, in other words, as being a testament of personal property. To constitute such an instrument no particular form is necessary. All that is required is, that it should clearly appear, that it is the intention of the party, that it should operate after his death and not before; for that constitutes the test whether it is testamentary or not. Hence a deed poll, or indenture, a deed of gift, a bond, a marriage settlement, letters, drafts on bankers, assignments of bonds, and indorsement of notes, have been held to be testamentary, where it was clear, that they were intended to operate only after the death of the party. See Williams, Ex'rs & Adm'rs (Ed. 1838) pt. 1, bk. 2, pp. 58–61, c. 2, § 3. Tried by this test it is plain, that these letters are purely testamentary. They are to take effect in the event of the death of Sir John, and after his death, and until that period they are intended to be inoperative. Swinburne has put the definition of a will or testament correctly when he says, "It is the first sentence of our will touching what we would have done after our death," respecting our property. Swinb. Wills, pt. 1, § 231; Williams, Ex'rs & Adm'rs, pt. 1, bk. 1, p. 6, c. 2. And this is the very definition given by Modestinus in the Roman law. Testamentum est voluntatis nostrae justa sententia de eo, quod quis post mortem suam fieri velit. Dig. lib. 28. tit. 1. 1. 1.

In respect to the second question, by what law the execution of a will of personal estate is to be governed as to its validity and interpretation, there is now no ground for doubt. The rule now firmly established is, that the law of the place of the testator's domicil is to govern in relation to personal property, although the will may have been executed in another state or country, where

a different law prevails. It was settled many years ago in America, and, at least, as early as the case of Desesbats v. Berquier, 1 Bin. 336, and the same rule is now as firmly established in England. Stanley v. Bernes, 3 Hagg. Ecc. 373–466; Moore v. Darell, 4 Hagg. Ecc. 346, 334; Countess Ferraris v. Marquis of Hertford, Curt. Ecc. 468. So that here there is no matter open to controversy. The validity and interpretation of these testamentary papers must be governed by the laws of the province of New Brunswick, where Sir John Caldwell was domiciled at the time of his death, and where they were executed; and by that law the testamentary papers are utterly void and incapable of any legal operation to pass the property bequeathed therein. If, indeed, these papers had constituted a valid testament, the legatees could have obtained no benefit from the bequests therein contained, since it is admitted that Sir John died insolvent. But then the present grant of administration, being not as in a pure case of intestacy, could not have stood; but administration should have been taken by the plaintiff as administrator cum testamento annexo; and this could not have been granted until after the papers had been first duly admitted to probate in the proper probate court of the province of New Brunswick; or at least until they were established as testamentary in the proper court in Massachusetts. Notwithstanding the doubt intimated by Sir John Nicholl in the Case of Reid, 1 Hagg. Ecc. 474, I very much incline to the opinion that either course might have been open to the parties to have been pursued, if these papers had been a valid testamentary disposition; and I should rather gather from the case of Price v. Dewhurst, 4 Mylne & C. 80, 84, that this was the inclination of opinion of Lord Cottenham in Larpent v. Sindry, 1 Hagg. Ecc. 382, where it was thought a foreign will might well be admitted to probate in the ecclesiastical courts of England, upon the production of an exemplified copy of the will proved in the foreign domicil. See 1 Williams, Ex'rs & Adm'rs (Ed. 1838) pt. 1, pp. 228, 229, c. 3, § 6. But it is unnecessary to decide this point; and I have introduced it merely to show, that the present bill, upon the present grant of administration, is maintainable solely upon the ground, that the case is one of pure intestacy of Sir John Caldwell.

Upon the whole, upon the grounds already stated, I hold, that these papers are testamentary in their nature, character and operation, and as such are a nullity by the law of Sir John's domicil; and that consequently he died intestate, and the plaintiff, as his administrator, is entitled to the assets belonging to Sir John, for which the present bill is brought. In respect to the question of interest to be allowed upon the property, my judgment is, that as Mr. Appleton is in no default, and could not safely

have acted otherwise than he has done, that he ought not to pay any interest upon the assets, unless he has made interest thereon; and it does not appear that he has made any. His is the case of a mere state administrator, acting bonâ fide, and enitled to be protected by the court. He should, therefore, receive the ordinary costs as between client and solicitor. In respect to the other defendants, I think, that the case is not one for costs either for them or against them. The questions involved in the case are very fit for discussion, and were too novel and important, at least here, not to justify a full defence on their part. It appears to me, therefore, that they are not entitled to any costs, and they ought to bear their own costs; and of course, the plaintiff is to bear his own costs as a charge upon the fund. I shall direct a decree to be entered accordingly.

The decree was as follows: That the said Sir John Caldwell, in the bill mentioned, at the time of the writing and executing the letters mentioned in the said bill, and also at the time of his death, was domiciled in the province of New Brunswick; and that the letters aforesaid purport to be, and are, testamentary papers; and that the legal validity and interpretation thereof are to be governed and adjudged by the laws of the said province; and that the same not being executed so as to be binding as a will and testament by the laws of the said province, they are to be deemed to all intents and purposes as testamentary papers, a mere nullity, and of no effect; and that the said Sir John Caldwell is, therefore, to be deemed to have died intestate; and that the said Thomas C. Grattan having been duly appointed administrator of the goods and effects of the said Sir John Caldwell, is entitled to have and hold as such, the assets of the said Sir John Caldwell, now in the hands of the said William Appleton, as in his answer is stated and admitted. And it is thereupon ordered and decreed by the court, that the said William Appleton do forthwith pay over the same to the said Thomas C. Grattan, as administrator, deducting therefrom the amount which shall be awarded to him as costs in this cause by the court, as hereinafter stated. And the court do further order and decree, that the said William Appleton be allowed his reasonable costs, as between client and solicitor, in this cause, to be settled, in case of difference between the parties, by a master of the court. And that the defendants, Jacob A. Hathorne and Julia A. Hathorne, his wife, do neither receive nor pay any costs; and that the costs of said Thomas C. Grattan, in the cause, be a charge upon the assets to be received in pursuance of this decree.