| 38 | 451 |
| 128 | 88 |

## SMITH, ADMINISTRATOR, v. DORSEY.

GIFT.—*Inter Vivos.*—*Causa Mortis.*—One who had entered the military service during the late war, a short time before starting for the army, in which he died, said to a friend, in regard to a gun which he had loaned to that friend, "Well, if I never return, you may keep the gun as a present from me." Upon a suit by his administrator for the recovery of the gun; *Held,* that the facts did not make a gift, either *inter vivos* or *causa mortis.*

APPEAL from the Montgomery Common Pleas.

BUSKIRK, C. J.—This was an action of replevin for the possession of a gun alleged to be unlawfully detained by the defendant. The complaint was in the usual form. The de-

fendant answered by the general denial. By the agreement of the parties, the cause was submitted to the court for trial.

Upon the trial of the cause, the following facts were admitted to be true, and to be taken as such by the court in the decision of the case:

"First. That the plaintiff is the administrator of the estate of David W. Smith, deceased, who was the owner of the gun in controversy.

"Second. That previous to the death of said decedent, and before his going into the army, he had loaned the gun in controversy to the defendant, and that the possession of said gun has remained in the defendant ever since, subject to the proof of John F. Wilhite, as to the character of the defendant's possession.

"Third. That the gun is of the value of fifty dollars.

"Fourth. That prior to the commencement of this action, a demand was duly made by the plaintiff for the possession of the gun, which demand was refused."

Whereupon, the said John F. Wilhite was called, and testified as follows:

"I was in Bainford's drug store one day during the war; the defendant, Dr. Dorsey, and David W. Smith, the decedent, and others were also present; they had been conversing; as the said Smith turned to leave the store, the defendant said to him, 'Well, Billy, what about that gun of yours I have?' Smith turned and replied, 'Well, if I never return, you may keep the gun as a present from me;' this was a short time before he started for the army; Smith never returned, but died in the army."

Upon the above evidence, and the admitted facts, the court found for the defendant.

The plaintiff moved the court for a new trial, because, first, the finding of the court was not sustained by sufficient evidence; second, that the finding of the court was contrary to law. The court overruled the motion, and rendered judgment on the finding, to which ruling the defendant excepted.

Smith, Adm'r, *v.* Dorsey.

The appellant has assigned for error the overruling of the motion for a new trial.

The right of the plaintiff below, and the appellant here, to recover in this action was plain, undoubted, and incontrovertible, unless the facts admitted to be true and those proved on the trial constitute a valid gift *inter vivos*, or a gift *causa mortis*.

To constitute a valid gift *inter vivos* it is essential that the article given should be delivered absolutely and unconditionally. The gift must take effect at once and completely, and when it is made perfect and complete by delivery and acceptance, it then becomes irrevocable by the donor. Gifts *inter vivos* have no reference to the future, but go into immediate and absolute effect. A court of equity will not interfere and give effect to a gift that is inchoate and incomplete. 1 Parsons Con. 234; 2 Kent Com. 438; Bouv. Law Dict. title; GIFTS, *inter vivos*; *Bedell* v. *Carll*, 33 N. Y. 581; *Irish* v. *Nutting*, 47 Barb. 370; *Dexheimer* v. *Gautier*, 34 How. Pr. N. Y. 472.

In *Irish* v. *Nutting, supra,* the court say: "But it clearly cannot be sustained as a gift *inter vivos*, for the obvious reason that it was coupled with a condition upon the happening of which the owner was to resume possession. An absolute gift, which divests the donor's title, requires the renunciation on his part, and the acquisition on the part of the donee, of all the title to, and interest in, the subject of the gift."

The precise distinction between a gift *inter vivos* and *mortis causa*, as is correctly said in *Bedell* v. *Carll, supra,* is, that "in the one case, the title passes immediately to the donee on delivery, and the donor has no more right over the property than any other person; in the other, the title does not pass immediately; it is a conditional gift, to take effect only on the death of the donor, who in the meantime has the power of revocation, and may at any time resume possession and annul the gift."

It is very clear to us, from the facts admitted and those proved, that there was no intention on the part of the dece-

dent to part with the absolute title to the gun; but he contemplated and provided for a future contingency, on the occurrence of which he should resume it, making the appellee in the meantime the custodian.

It is very plain to us that there was no valid and executed gift *inter vivos*.

Having reached the conclusion that the facts admitted and those proved failed to establish a valid gift *inter vivos*, we are next to inquire and determine whether they amounted to a valid gift *mortis causa*.

From an examination of the elementary works and adjudged cases in England and in this country, we are satisfied that it is essential to a good gift *mortis causa*, that the donor should make it in his last illness, and in contemplation and expectation of the near approach of death. Blackstone calls it "a death-bed disposition of property," and defines it to be, "when a person in his last sickness, apprehending his dissolution near, delivers or causes to be delivered to another the possession of any personal goods to keep, in case of his decease." 2 Bl. Com. 514.

Williams, in his work on executors, says: "If a gift be not made by the donor in peril of death, *i. e.*, with relation to his decease by illness affecting him at the time of the gift, it cannot be supported as a donation *mortis causa*. 1 Williams Executors, 687.

Roper, in his work on legacies, states as a requisite, that the gift be made by the donor in peril of death, or during his last illness, and to take effect in case only the giver die. If then the gift have no relation to the death of the donor, or having such a reference, it be general, that is, to his decease at any time, he being at the period of the donation in no danger of death, nor afflicted with any disorder which proved fatal to him, such gift cannot be supported as a donation *mortis causa*. 1 Roper Leg. 3.

In *Hedges* v. *Hedges*, Pre. Ch. 269, which was the earliest case in the English books, Lord COWPER gives the following clear and comprehensive definition of a gift of the descrip-

tion under discussion, namely: "Where a man lies in extremity, or being surprised with sickness, and not having an opportunity of making his will; but lest he should die before he could make it, he gives with his own hands his goods to his friends about him." "This, if he dies," he adds, "shall operate as a legacy; but if he recovers, then does the property thereof revert to him."

In *Meredith* v. *Watson*, 23 Eng. Law & Eq. 250, which was a case of the gift, by a father to his son, of a bond, the court say: "It appears that the donor at the time was in bed, having an illness from which he never recovered. It is not necessary that the donor should have in contemplation his immediate dissolution, but only that the gift should be made upon the supposition that he will not recover. In this case it was, in fact, his last illness, and, so far, the facts are sufficient to satisfy the rule."

In *Weston* v. *Hight*, 17 Maine, 287, a gift was made while the donor was in expectation of immediate death from consumption, and he afterward so far recovered as to attend to his ordinary business for eight months, but finally died from the same disease. It was held that the gift could not be supported as a "*donatio mortis causa.*" EMERY, J., says: "The very ground upon which donations of this description are supported failed. There was such a subsequent recovery as vacated the gift."

We do not deem it necessary to make further quotations from the English decisions, as the rule laid down by Lord COWPER has been uniformly followed by all the subsequent decisions, with some slight modifications.

The American rule on this subject, as established by our most eminent elementary writers and the adjudged cases, will be found to be in entire accord with the English rule.

Says Judge STORY, "There can be no valid donation *mortis causa,* first, unless the gift be with a view to the donor's death; second, unless it be conditioned to take effect only on the donor's death by his existing disorder, or in his existing illness." 1 Story Eq. Jur., sec. 607.

In Willard Eq. Jur. 553, it is said: "But if a gift be made under no present peril of death, but under the consideration of man's mortality in general, it is not good as *donatio mortis causa.*"

"It is properly a gift of personal property by a party who is in peril of death, * * * and it is defeated by his recovery or escape from the impending peril of death." 1 Story Eq. Jur., sec. 606.

Prof. PARSONS says: "These gifts can only be made by a person by whom death is believed, on reasonable grounds, to be very near, and who makes the gift in view of, and because of, his approaching death." 1 Parsons Con. 236.

Three of the rules laid down by Judge REDFIELD, in his work on Wills, are applicable to the case under consideration, and are as follows:

1. To render the gift finally effectual, it must not only be made in apprehension of present peril of death, but death must ensue, without any perfect remission of the apprehended peril.

2. But it seems agreed on all hands that the gift, to operate as a good *donatio mortis causa*, must have been made to take effect only in the event of the donor's death by his existing disorder.

3. There must be an actual delivery of the chattel to the donee, so as to transfer the possession to him, in order to constitute a good gift *mortis causa.* 2 Redf. Wills, 299.

Chancellor KENT, speaking of gifts *mortis causa*, says: "It is essential to them that the donor make them in his last illness, or in contemplation and expectation of death;" and he adds, "the apprehension of death may arise from infirmity or old age, or from external and anticipated danger."

BACON, J., in *Irish* v. *Nutting, supra*, criticises the above definition of Kent, as follows: "Thus when Chancellor Kent, in defining such gifts, says, 'it is essential that the donor make them in his last illness, or in contemplation or expectation of death, and with reference to their effect after his death,' he gives a definition entirely supported by English

decisions; but when he adds, that 'the apprehension of death may arise from infirmity or old age, or from external and anticipated danger,' he superadds elements for which alone the Digest is cited as authority, and which cannot, to the extent of the rule as thus defined, be supported by any case in the English or American reports."

The same learned judge, after discussing the definition given by Lord COWPER, and showing the slight modifications that have been made in reference to the severity and extent of the sickness, and its nearness to the hour of dissolution, lays down the broad proposition, that "there will no case be found where such a gift is upheld, in which there was not either peril of death from some cause imminent and impending, or the conceived near approach of natural death. It is not indeed necessary that the party should be *in extremis*, according to some of the earlier cases, but the gift will be presumed to be in contemplation of death, when the donor is on his death bed, or languishing in what proves to be his last illness."

TILGHMAN, C. J., in *Wells* v. *Tucker*, 3 Binn. 366, says: "A *donatio causa mortis* is a gift of a personal chattel, made by a person in his last illness, subject to an implied condition, that if the donor recovers, the gift shall be void."

YEATES, J., in delivering the opinion of the court, in the same case, says: "It is agreed on all hands, that in such cases the gift must be made in the party's last sickness."

It was said by the court, in *Hebb* v. *Hebb*, 5 Gill, 506, that "the gift must be conditioned only to take effect by the death of the donor by his existing disorder."

To constitute a *donatio causa mortis*, there must be a transfer or delivery of property in expectation of death from an existing illness, the donation depending on the condition of death from such illness. *Grattan* v. *Appleton*, 3 Story, 755; *Lee* v. *Luther*, 3 Woodb. & M. 519.

GASTON, J., in *Shirley* v. *Whitehead*, 1 Ire. Eq. 130, says: "Indeed, it is not easy to conceive how a donation *mortis causa* could be established by any proof in a case like this, where

the testator was not surprised by sickness, but lived for months afterward, and had abundant opportunity to make his testamentary dispositions in the regular and ordinary way."

But it is maintained by the learned counsel for the appellee, that the facts of this case bring it within the rule that the gift was made in apprehension of death. The following propositions are claimed to be established by the evidence: first, that the deceased made the gift within a very few hours of leaving for active service of the most dangerous character; second, that within a very brief period he met death in that service; third, that the deceased, when he made the gift, apprehended death; fourth, that he might reasonably apprehend death; fifth, that the court would judicially take notice of the fact that the deceased could have reached the army of the Potomac or of the Tennessee, from his residence, within a few hours from the time the gift was made.

There are two recent decisions very much in point. The facts are almost identical with those in this case. The law applicable to those cases will apply to the case under consideration. The cases are *Dexheimer* v. *Gautier*, 34 How. Pr. N. Y. 472, and *Irish* v. *Nutting*, 47 Barb. 370. The case of *Dexheimer* v. *Gautier*, was an action by the administrator of a deceased soldier to recover from Gautier a certain sum of money which was alleged to have belonged to the deceased at the time of his death. The defendant answered and proved on trial that the decedent enlisted in the army in 1864, and received a bounty of six hundred and twenty-five dollars; that before his departure to the army, the decedent made an actual, free, voluntary, and valid gift of said money to him, on the condition that he did not live to return from the army; and that such person actually died in the army. The court held that such facts did not constitute a valid gift *mortis causa*, for the reason that the decedent was, at the time of such gift, in good health, and had no cause to apprehend death from any impending danger, or from material causes.

The case of *Irish* v. *Nutting* was an action of replevin,

Smith, Adm'r, *v.* Dorsey.

brought by the plaintiff against the defendant as administrator of the estate of Charles H. Gardner, deceased, to recover three promissory notes executed by Irish to the said Charles H. Gardner. The plaintiff claimed to be the owner of the notes by virtue of a gift made by the said decedent on the eve of his going into the United States army as a soldier of the United States in the late war, and in apprehension of dying in such service, and that he died, while such soldier, on the 26th day of June, 1863, in consequence of disease contracted in such service. It appeared that the notes were delivered to the plaintiff, who retained the same until after the death of the donor, when they were delivered to the defendant, as administrator, for the purpose of inventory and appraisement, who refused to deliver them back on demand. The gift was made after the decedent had enlisted in the army, but before he had entered on actual service, but in the expectation of soon being ordered to the seat of war. He delivered the notes to the plaintiff, saying in the language of one witness, "I give you these notes; if I never return they are yours;" or, in that of another, "take them, and if I never return, they are yours; if I do not return, I shall not want them;" or, in the words of still another, "I give these notes to you; I may never return, and if I do not, they are yours." The court held there was no valid gift. In reference to the fact that the donor had enlisted in the army and was on the eve of starting to the seat of war, and the apprehension of death therefrom, the court say: "The element of illness, in any degree, does not enter into the case, nor does it come within the category of the conceived near approach of death from an impending or apprehended peril. The alleged donor was in good health, many hundreds of miles from the seat of war, and if he 'snuffed the battle, the thunder of the captains, and the shouting,' it was indeed, 'afar off'—too far to give any one not utterly craven hearted the least apprehension or disturbance. The only expression he made, having any relevancy to a possibly expected peril, was, that he was going to a dangerous place, and might never return. So it

is dangerous to leave home on a railroad journey, or a steamboat excursion, or to ride forth after a pair of spirited horses; but no one would think either of these such an impending peril as to justify a man in giving away his earthly goods, under the conception that death was near at hand, if not already knocking at the door. In short, a vague and general impression that death may occur from those casualties which attend all human affairs, but which are still too remote and uncertain to be regarded as objects of present contemplation and apprehended danger, is not sufficient to sustain such a gift as the one which is claimed in this case. The party must be in a condition to fear approaching death from a proximate and impending peril, or from illness preceding expected dissolution."

We are very clearly of the opinion, both on principle and by the authority of adjudged cases, that the facts in the case under consideration did not constitute a valid gift, either *inter vivos* or *mortis causa*. It is also insisted by the counsel for the appellee that the transaction can be maintained as a contract. The position assumed is, that the decedent agreed to give the gun to the appellee on the condition and in consideration of his agreement to take care of the gun. We are unable to discover any of the elements of a contract of sale. An executory agreement to give an article cannot be enforced, either at law or in equity.

While there may be much truth and justice in what is said in the brief of the appellee, in reference to the bad faith and disregard of the wishes of the decedent by the administrator of his estate, such considerations can have no weight with us in determining the legal rights of the parties.

The court erred in overruling the motion for a new trial.

The judgment is reversed, with costs; and the cause is remanded, with directions to the court below to grant a new trial, and for further proceedings in accordance with this opinion.

*M. D. White* and *T. Patterson*, for appellant.

*B. K. Elliott*, for appellee.