NANCY IRISH *vs.* NEWTON M. NUTTING, administrator, &c.

A vague and general impression that death may occur from those casualties which attend all human affairs, but which are still too remote and uncertain to be regarded as objects of present contemplation and apprehended danger, is not sufficient to sustain a gift *mortis causa.*

The donor must be in a condition to fear approaching death from a proximate and impending peril, or from illness preceding expected dissolution.

In August, 1862, G. enlisted as a soldier in the volunteer service of the United States. On the 17th of that month, before he had entered on actual service, but while in the expectation of soon being ordered to the seat of war, he was at the plaintiff's house, on a furlough. On that occasion he delivered three promissory notes, made by one I., to the plaintiff, saying: "I give you these notes; if I never return they are yours;" or, in the words of another witness, "Take them, and if I never return, they are yours; if I do not return, I shall not want them," &c. G. died in June, 1863, as the court found, while a soldier, in consequence of disease contracted in the service. *Held* that the gift of the notes was not, under the circumstances, a valid *donatio mortis causa.*

*Held, also,* that the transaction could not be sustained as an executed, absolute gift *inter vivos,* because it was coupled with a condition upon the happening of which the owner was to resume possession of the notes,

An absolute gift, which will divest the donor's title, requires the renunciation on his part, and the acquisition on the part of the donee, of all the title to, and interest in, the subject of the gift.

APPEAL from a judgment entered at the circuit, on a trial before the court without a jury. The action was brought by the plaintiff against the defendant, as administrator of Charles H. Gardner, deceased, to recover the possession of three promissory notes, made by Jonathan Irish, and payable to the said Charles H. Gardner, as follows : One note dated March 24, 1862, for $45, payable one day after its date ; one note dated August 14, 1862, for $40.60 and interest, payable three years from its date ; and one note dated August 16, 1862, for $100 and interest, payable three years after date. The plaintiff claimed the notes by virtue of a gift of the same to her by Charles H. Gardner, the payee. The plaintiff retained the notes in her possession from the time of the alleged gift until the 13th of March, 1865, when they went into the possession of the defendant. The defendant was duly appointed administrator of the property and effects of

Irish *v.* Nutting.

the said Charles H. Gardner, deceased, and as such obtained possession of the notes with a view to an inventory and appraisal, and as such administrator claimed the right to hold the notes, and refused to surrender them to the plaintiff.

The judge before whom the action was tried, found as facts that the defendant, on the 10th of March, 1865, wrongfully detained the above notes from the plaintiff. That said notes belonged to and were the property of the plaintiff when taken by the defendant, and still remain her property by virtue of a valid gift thereof to her from Charles H. Gardner, the payee in said notes mentioned. That said gift was made to the plaintiff by said Charles H. Gardner, on the eve of his going into the United States army as a soldier of the United States in the late war, and in apprehension of dying in such service, and that he died while such soldier, on the 26th day of June, 1863, in consequence of disease contracted in such service. That said gift was a gift termed in law *donatio mortis causa.* That the defendant, administrator of the said Charles H. Gardner, obtained possession of said notes with a view to an inventory and appraisal, and on demand of the plaintiff, refused to deliver them back to her, and wrongfully detained them; that the value of said notes is the full face thereof, with interest, amounting to $295.40; that the damages of the detention are six cents. That the plaintiff is entitled to maintain the action in law for the recovery of the possession thereof. And the judge directed that judgment be entered in favor of the plaintiff and against the defendant for the recovery of the said personal property, or the value thereof, in case a delivery thereof could not be had, and six cents damages for their detention. To which order, direction and decision the defendant duly excepted. And the defendant requested the court to find that at the time when the transaction in regard to the handing of said notes to the plaintiff took place, the said Charles H. Gardner had recently enlisted as a soldier in the army of the United States; that he was at the plaintiff's house on a furlough;

that he had not been in actual service, but expected soon to go to the seat of war ; that he was in good health at the time. The defendant also requested the court to find that the said Charles H. Gardner enlisted in August, 1862, was home on a furlough August, 17, 1862, and did not die till the June following, 1863. Also that the said transaction took place on Sunday. All of which the judge found as requested.

The defendant appealed from the judgment.

*A. Perry,* for the appellant. I. The transaction between Charles H. Gardner and the plaintiff on the 17th of August, 1862, in relation to the notes in question can not be sustained as a gift *inter vivos* or *causa mortis.* (1.) It was not a gift *inter vivos,* because it was conditional and made to depend upon an uncertain event in the future. Gifts of this description have no reference to the future, and go into immediate and absolute effect. The donor renounces, and the donee immediately acquires, all title and interest in the subject of the gift. (2 *Kent's Com.* 438. 2 *Black. Com.* 441.) 2. It was not a valid gift *mortis causa,* for the reason that Gardner was not in a situation in which it was possible for him to make a donation of that kind. He was only eighteen years of age, in good health, and in no peril from which he could reasonably anticipate that his death was near at hand. It is essential to a good gift *mortis causa,* that the donor should make it in his last illness, and in contemplation and expectation of the near approach of death. (*Weston* v. *Hight,* 5 *Shepley,* 287.) Blackstone calls it "*a death bed disposition* of property," and defines it to be "when a person in his last sickness, apprehending his dissolution near, delivers or causes to be delivered to another the possession of any personal goods to keep, in case of his decease." (2 *Black. Com.* 514. 1 *Fonbl. on Equity,* 288, *note.*) Lord Cowper defined it to be "when a man lies in extremity, or being surprised with sickness, and not having an opportunity of making his will, but lest he should die before he could make it,

Irish *v.* Nutting.

he gives with his own hands his goods to his friends about him; this, if he dies, shall operate as a legacy; but if he recovers, then does the property thereof revert to him." *Hedges* v. *Hedges, Prec. in Chanc.* 269.) This definition was adopted by the chancellor, in *Prince* v. *Hazleton,* (20 *John.* 514,) and by Campbell, J. in *White* v. *Wager.* (32 *Barb.* 261.) Williams, in his work on executors, says : "If the gift be not made by the donor in peril of death, *i. e.,* with relation to his decease by illness affecting him at the time of the gift, it can not be supported as a *donatio mortis causa.*" (1 *Williams on Executors,* 651, *citing Gilbert's Rep. in Eq.* 13. *Walter* v. *Hodge,* 2 *Swans.* 97, 108, *note.*) Says Judge Story, "There can be no valid donation *mortis causa;* (1) unless the gift be with a view to the donor's death ; (2) unless it be conditioned to take effect only on the donor's death by his existing disorder or in his existing illness." (1 *Story's Eq. Jur.* § 607, *a.* 1 *Willard's Eq. Jur.* 553. *Willard on Executors,* 417.) To the same effect are the cases in England and in this country. (*Dury* v. *Smith,* 1 *P. Wms.* 404.) Gift of a £100 note by a person "in his last sickness" in case he should die of that sickness. Held good. (*Lawson* v. *Lawson,* 1 *P. Wms.* 441.) Gift of a purse of gold. The master of the rolls was clearly of the opinion that as to the purse of gold it was *donatio causa mortis* "in regard the testator was then languishing on his death bed." (*Miller* v. *Miller,* 3 *P. Wms.* 356.) Sir Joseph Jekyl, master of the rolls, said: "Neither are gifts of this kind good unless made by the party in his last sickness." (*Ward* v. *Turner,* 2 *Vesey, Sen.* 430.) The donor is described as being in a very bad state of health, and near his end. (*Meredith* v. *Watson,* 23 *Eng. Law and Eq. Rep.* 250.) This was a case of the gift, by a father to his son, of a bond. The court say : "It appears that the donor, at the time, was in bed, having an illness from which he never recovered. It is not necessary that the donor should have in contemplation his immediate dissolution, but only that the gift should be

Irish *v.* Nutting.

made upon the supposition that he will not recover. In this case it was in fact his last illness, and so far the facts are sufficient to satisfy the rule." (*Weston* v. *Hight*, 5 *Shepley*, 287.) In this case a gift was made while the donor was in the expectation of immediate death from consumption, and he afterwards so far recovered as to attend to his ordinary business for eight months, but finally died from the same disease. It was held that the gift could not be supported as "*donatio mortis causa.*" Emery, J. says: "The very ground upon which donations of this description are supported, failed. There was such a subsequent recovery as vacated the gift." (*Wells* v. *Tucker*, 3 *Binney*, 366.) Tilghman, Ch. J. "*A donatio causa mortis* is a gift of a personal chattel, made by a person in his last illness, subject to an implied condition, that if the donor recovers, the gift shall be void."

Yeates, J. "It is agreed, upon all hands, that the gift must be made in the party's last illness. (*Raymond* v. *Sellick*, 10 *Conn. R.* 480.) Waite, J. defines *donatio causa mortis* in substantially the same language used by Blackstone in his definition cited above. (*Hebb* v. *Hebb*, 5 *Gill. Rep.* 506.) "The gift must be conditional, only to take effect by the death of the donor by his existing disorder." (*Shirley* v. *Whitehead*, 1 *Iredell's Eq. R.* 130.) Gaston, J. "Indeed, it is not easy to conceive how a donation *mortis causa* could be established by any proof in a case like this, where the donor was not surprised by sickness, but lived for months afterwards, and had abundant opportunity to make his will in the regular and ordinary way." (*Barker* v. *Barker*, 2 *Gratt. Rep.* 344.) "A parol gift of a slave, to take effect upon the death of the donor, who is not then sick, is void. In January the donor, being about to leave Richmond for Kentucky, told the defendant to take and use a slave as his own, and if he never returned to Virginia the defendant might have the slave. The donor left Richmond on the same day and went to Kentucky, where he died the

May following, never having returned to Virginia. The gift was held void. (*See* 24 *Verm. R.* 594, 597.) In *Coutant* v. *Schuyler*, (1 *Paige*, 316,) a feigned issue was awarded "to ascertain whether the testator was of sound and disposing mind and memory, and did freely and voluntarily deliver the note in question to David Marsh, in his last sickness and in contemplation of death, for the use of the complainant, as a gift to her to take effect in case of his death." (*Harris* v. *Clark*, 2 *Barb.* 94, 96.) Gridley, J. "To render a gift of this description valid, several requisites are indispensable. (1.) It must be made with a view to the donor's death. (2.) It must be conditional, to take effect only on the death of the donor, of *his existing disease* or *during his existing illness*." (*Bedell* v. *Carll*, 33 *N. Y. Rep.* 581.) A somewhat broader definition of this species of gift has been given by some elementary writers, referring to the Roman civil law. Roper, in his work on legacies, states as a requisite "that the gift be made by the donor in peril of death *or* during his last illness, and to take effect only in case the giver die." (1 *Roper on Legacies*, 3.) Kent, speaking of gifts *mortis causa*, says, "it is essential to them that the donor make them in his last illness *or* in contemplation and expectation of death." And he adds, "the apprehension of death may arise from *infirmity* or *old age*, or from *external and anticipated danger*." Parsons says: "These gifts can only be made by a person by whom death is believed, on reasonable grounds, to be *very near*, and who makes the gift in view of and because of his aproaching death." (1 *Parsons on Cont.* 201, 4*th ed.*) None of these writers, however, refer to any case in which the gift was made in apprehension of death from *external danger*. The element of external peril is derived wholly from the civil law. It is believed that no case can be found, where the common law prevails, in which a gift *causa mortis* has been held valid unless made in the last sickness of the donor. The court may be referred to *Nicholas* v. *Adams*, (2 *Whar. R.* 17,) where Gibson, Ch. J. defines *donatio mortis causa* to

be "a conditional gift dependent on expected death." He adds, however, "but it is certainly not requisite that the donor be in such extremity as is requisite to give effect to a nuncupation, which is sustained from necessity merely." In this case the donor was very sick, and lived only fourteen days after making the gift. The case at bar can not be brought within any of these definitions. A vague and general fear that death may occur from some uncertain cause in the future is not sufficient. All the definitions and all the cases imply that the party must be in *present peril* from sickness or other cause, and believe that death from that peril is *very near*. Roper says: "If then the gift have no relation to the death of the donor, or, having such a reference, it be general, that is, to his decease at any time, he being at the period of the donation in no danger of death, nor afflicted with any disorder which proved fatal to him, such gift can not be supported as a donation *mortis causa.*" (1 *Roper on Legacies*, 3.) In *Willard's Equity Jurisprudence*, at page 553, it is said: "But if the gift be made under *no present peril* of death, but under the consideration of man's mortality in general, it is not good as *donatio mortis causa.*" "It is properly a gift of personal property by a party who *is in peril of death,* * * * and it is defeated by his recovery or escape from the *impending peril* of death." (1 *Story's Eq. Jur.* § 606. *Parish* v. *Stone*, 14 *Pick.* 198, 203.) 3. It is not shown that Gardner's death occurred from any peril which he anticipated when he made the gift. If he escaped the particular peril which he apprehended when he made the gift, the gift became void. (*See authorities above cited.*) 4. It is not shown that Gardner never returned to Parish after leaving in August, 1862. If he did so return, the gift became void by the very terms in which it was made. 5. These gifts are of a dangerous nature, from being necessarily vague and open to fraud, and new principles will not be adopted to sustain them. The courts will not extend the sphere of their action. They will recognize the law in regard to them so far as it has

Irish *v.* Nutting.

been adopted and made a part of the common law, and no farther. (*Reymond* v. *Sellick*, 10 *Conn. Rep.* 480. *Hebb* v. *Hebb*, 5 *Gill. R.* 506. *Wells* v. *Tucker*, 3 *Binney*, 366. *Headley* v. *Kirby*, 1 *Am. Law Reg.* 25; and article by the editor, same vol. p. 1. 1 *Bligh's N. S.* 533. *Harris* v. *Clark*, 3 *Comst.* 121. 1 *Parsons on Cont.* 201, 4th ed. *Civil Code, Louis,* § 1653.)

II. The finding that Gardner died while a soldier in the army of the United States, in consequence of decease contracted in the service, is wholly unsupported by proof. It is not shown that Gardner ever went to the seat of war.

III. The court should have nonsuited the plaintiff, as requested by the defendant's counsel.

*George G. French,* for the respondent. I. The deceased *intended* to transfer these notes to the plaintiff, and consummated it by an immediate delivery. Unless some rule of law has been violated, it will be upheld. (1.) The transaction may be construed to be a grant, or executed contract, founded upon consideration of the gratuitous clothing and care theretofore provided by the plaintiff for Charles, and on condition that she would receive and care for the notes, and return them in case he survived the perils of war; or, (2.) It may be construed to be an absolute executed gift *inter vivos;* or, (3.) A *donatio mortis causa.*

It was claimed in the court below, that if it was a *donatio mortis causa,* it should have been made *in extremis.* (*Bedell* v. *Carll,* 33 *N. Y. Rep.* 581, 584.)

II. A *donatio mortis causa* need not be made *in extremis,* nor within any specified time prior to death. It is sufficient if made in *peril* of death, or in the *conceived* approach of death, and that the donor subsequently die of the same peril or anticipated death. If made *in extremis,* it is presumed to be a *donatio mortis causa,* and not *inter vivos.* (1.) As defined by elementary writers, no particular time is prescribed between the gift and death; nor is the kind of peril pre-

scribed ; nor that it be *actual* peril. It may be *conceived* or *apprehended* approach of death. ".Such gifts are conditional, like legacies ; and it is essential to them that the donor make them in his last illness, or in contemplation and expectation of death."  *  *  "The apprehension of death may arise from infirmity or old age, or from *external* and *anticipated danger.*" (2 *Kent's Com.* 444, 6th *ed.*) "It is properly a gift of personal property by a party who is in peril of death, upon condition that it shall presently belong to the donee in case the donor shall die, but not otherwise. To give it effect, there must be a delivery of it by the donor ; and it is a subject to be defeated by his personal revocation, or by his recovery or escape from the impending peril of death." (1 *Story's Eq. Jur.* § 606, *p.* 685.) "Where a person being in peril of death, gives some thing, yet not so that it should be presently his who received it, but in case only the giver die."  *  *  *  "Nothing can be more clear than that this *donatio mortis causa* must be a gift made by a donor in contemplation of the *conceived* approach of death." (1 *Roper on Legacies*, 2.) "That the gift be made by the donor in peril of death, *or* during his last illness ; and to take effect only in case the giver die." (1 *Bouv. Law Dic.* 485.) In a learned note appended to the case of *Ward* v. *Turner*, (65 *Law Library*, 608,) the author defines as follows : "The gift must be made by the donor in contemplation of the *conceived* approach of death," citing cases, "but a gift will be presumed to be in contemplation of death when the donor is in his 'last sickness,' or 'languishing on his death bed,'" citing cases. (2.) As defined by English and American adjudicated cases, the same doctrine will be found to prevail." "Nothing can be more clear," said Lord Elden, in *Duffield* v. *Elwes*, (1 *Bligh N. S.* 530,) "than that a *donatio mortis causa* must be a gift made by a donor in contemplation of the conceived approach of death." In *Meredith* v. *Watson*, (23 *Eng. L. & Eq.* 251,) Kindersly, V. C. said : "It is not necessary that the donor should have in contemplation his

*immediate* dissolution, but only that the gift should be made upon the supposition that he will not recover." Where the donor, on the 4th day of November, 1784, delivered his will to the donee, to which was attached an hundred pound note, saying, "take care of it; there is some thing for yourself, as soon as I am dead;" and the donor, on the 15th day of January following, made another will, and subsequently died, (the time of death is not stated,) the lord chancellor said: "I think the gift good as a *donatio mortis causa.*" (*Hill* v. *Chapman*, 2 *Brown's Ch.* 612, 477.) This case is cited and approved in *Walter* v. *Hodge*, (2 *Swans.* 97.) In *Meach* v. *Meach*, (24 *Verm. Rep.* 591,) a gift was sustained as a *donatio mortis causa* where six weeks intervened, May 13, 1847, to June 23, the donor being sick with consumption, and from which he died. In *Nicholas* v. *Adams*, where the donor being sick, on the 18th day of October, 1832, gave his watch to the donee, and on the 22d day of the same month renewed the gift by a written instrument, and on the 29th day of the same month made his will, bequeathing *all* of his property to another, and died of the same sickness, November 1st, 1832, being two weeks after first gift, the court below held that making his will was such a recovery as revoked the gift, and could not therefore be deemed in the *last* sickness. On appeal, the judgment was reversed, and the question fully and ably discussed by Jones, J. (1 *Miles' Penn. R.* 90 *to* 104.) And on appeal again, the opinion of Jones, J. was sustained by the Supreme Court of Pennsylvania, in an exhaustive opinion written by Gibson, Ch. J. wherein it is clearly shown and held, that it was not indispensable to a valid *donatio mortis causa* that it be made *in extremis;* and whether the gift be absolute or conditional, it is good as against the representatives of the donor, and every one (except creditors) claiming by title subsequent. Conditions of *donatio mortis causa* are usually implied by last sickness, not expressed. If expressed, it was entirely proper to make such a gift—such gifts are no where *restrained* by the courts,

and if disapproved as against public policy, it is the legislature and not the courts that restricts or interferes. (2 *Whart. Penn. R.* 17–22.) This case reviews all the authorities upon this subject, and has become the leading case, and is quoted with approval in 1 *Story's Eq. Jur.* 687, § 606 ; 2 *Kent's Com.* 444, 6*th ed.* ; 65 *Law Library,* 614 ; 1 *Roper on Legacies,* 2, *edition of* 1848 ; 1 *Burrill's Law Dic.* (3.) The civil law, from which this law was derived, would not exclude a recovery in this case. " According to Vinnius, in his commentaries on this description of *donatio mortis causa,* it is not necessary to the constitution thereof, that the giver should be in *actual* and *imminent* danger of death, but it is enough if he is moved by the general consideration of death, *sola cogitatione mortalitatis ex sorte humana,* provided he *expressly declares* at the time he gives with such expectation and intention ; otherwise the gift will be construed a pure and simple *donatio inter vivos,* and consequently will not be revocable." The same account is given by Swinburn, in the 7th section of his *Treatise on Testaments and Wills.* (*Roberts on Frauds,* 197, *note.*) " The civil law admitted donations *mortis causa* for other reasons than the fear of appoaching death ; as when a man about to set forth on a long journey or voyage, and contemplating the perils of the way, was desirous of making a conditional gift of his property, to take effect in favor of some relative or friend, in case he died, but to be resumed should he escape the threatened danger." (1 *Tomlin's Law Dic.* title *Donatio Causa Mortis,* 4*th ed. London,* 1835.) (4.) The authorities cited to establish the reverse proposition, so far as I have examined, do not conflict with the right of the plaintiff to recover. The description by Lord Cowper, in *Hedges* v. *Hedges,* (*Prec. Ch.* 269,) does not exclude any other case, but rather declares that a gift *in extremis,* and "not having an opportunity of making his will," ✻ ✻ ✻ "shall operate as a *donatio mortis causa.*" That is, I submit, shall be *evidence* that the condition is annexed. I have been unable to find the original report in this case, and am

Irish *v.* Nutting.

ignorant of the facts upon which it is based, but suggest that it is mere description of á nuncupative will. In *Duffield* v. *Elwes*, (1 *Bligh N. S.* 497–530,) the deceased gave a deed and mortgage to his daughter *in extremis*, and died, and the court held it to be a *donatio mortis causa.* In *Weston* v. *Hight*, (17 *Maine Rep.* 287,) the donor was sick with consumption, revived and lived for eight months, which the court held revoked the gift, or at least that a new trial should be had, " so that the real truth may be made manifest." In *Blount* v. *Burrow*, (1 *Ves. Jr.* 546,) the donee testified that he had received them (bonds) from the testator twelve days prior to death, with directions to keep them in case of his death. Lord Eyre held " that the objection that it was not stated to be in his last illness was fatal, and directed an issue to try whether this was a *donatio mortis causa.* It was also claimed that the assets would be insufficient to pay debts; and even in this case, in the note to *Williams on Executors*, (*pt.* 2, *bk.* 2, *ch.* 2, § 4, *p.* 398, *note M*,) it is stated that it " does not seem to be supported by any other authorities." In *Prince* v. *Hazleton*, (20 *John.* 501,) the court was considering a nuncupative will, and construed certain words in the statute of 1813, (*Sess.* 36, *chap.* 31, § 14,) but which were repealed by the adoption of the Revised Statutes, and nuncupative wills were thereby prohibited, except by sailors and soldiers. (2 *R. S.* 60, § 22.) The definition in *Williams on Executors*, (*pt.* 2, *bk.* 2, § 4, *ed. of* 1832, *p.* 498,) does not prescribe within how long a period prior to death this gift may be made. " The gift must be made with a view to the donor's death," * * * " and when made while the donor was ill, and only a few days or *weeks* before death, it will be *presumed* that the gift was made in contemplation of death and in the donor's last illness."

III. It is equitable that the plaintiff should succeed in this action. (1.) There are no creditors to be *injured.* (2.) The plaintiff was the nearest friend of the deceased; she stood in *loco parentis* to him. (3.) It was clearly the inten-

tion of the deceased that she should, in the present contin-
gency, be the owner of the notes. (4.) Her title is prior to
that of the other heirs, and relates back to the time she
received the notes — not through the administrator. (5.) No
suggestion of artifice or.fraud, to obtain the notes, can be
charged upon the plaintiff. (6.) Upon the slightest consid-
eration, it was competent for the deceased to have sold the
notes to the plaintiff conditionally that they in whole or in
part revert to him if he survived the perils of war. Why
may he not waive such consideration and give the notes upon
such condition? What principle of.law is violated? Whether
called a *donatio mortis causa*, or *inter vivos*, or an executed
agreement, it is in accord with the policy of this court to
ascertain and carry out the *intention* of the parties, and to
sustain and establish what they in good faith intend to do.
More especially where the rights of creditors are not thereby
impaired.

*By the Court*, BACON, P. J. This is an action of replevin,
to recover the possession of three promissory notes, amounting
in all to some $185. These notes were originally the pro-
perty of one Charles H. Gardner, a brother of the plaintiff.
In August, 1862, Gardner enlisted in the volunteer service
of the United States, and on the 17th day of that month was
at the plaintiff's house on a furlough. This was before he
had entered on actual service, but in the expectation of soon
being ordered to the seat of war. On this occasion he
delivered these three notes to the plaintiff, saying, in the
language of one witness, " I give you these notes ; if I never
return they are yours ;" or, in that of another, " Take them,
and if I never return they are yours ; if I do return I shall
want them ;" or, in the words of still another, " I give these
notes to you — I may never return, and if I do not, they are
yours." It is stated in the finding of facts by the court, that
the gift was made by Gardner on the eve of his going into
the service as a soldier, and in apprehension of his dying in

Irish *v.* Nutting.

such service, and that he died while such soldier, on the 26th of June, 1863, in consequence of disease contracted in such service. On what this finding is grounded I am unable to perceive. The only evidence set forth in the case is that he enlisted in August, 1862, and died in June, 1863. There is no proof given as to where he died, or from what cause, whether in battle, or from wounds received in battle, or from disease inherent in his system, or contracted by exposure; nor even that he ever went to the seat of war, or was in the service at the time of his death. Either no such proof was given, or it has singularly been omitted in making up the case; or it may have been conceded by verbal admission on the trial, and no note made of it. We can hardly presume that there was nothing on which the court could base such a statement of facts, and therefore we may assume that they either did, or were conceded to exist. Upon them the court held and decided that the gift of the notes was, under the circumstances, a valid *donatio mortis causa,* and ordered judgment for the plaintiff.

On the argument, some attempt was made to sustain the transaction as an executed absolute gift *inter vivos,* founded on the consideration of the services theretofore rendered to Gardner by the plaintiff, in the care of his clothing and providing him board. But it clearly can not be sustained as such a gift, for the obvious reason that it was coupled with a condition upon the happening of which the owner was to resume possession. An absolute gift, which divests the donor's title, requires the renunciation on his part, and the acquisition on the part of the donee, of all the title to, and interest in, the subject of the gift. It is very clear, upon all the testimony, that there was no intention on the part of Gardner, to part with the absolute title to the notes, but he contemplated and provided for a future contingency, on the occurrence of which he should resume it, making the plaintiff in the meantime the custodian. A valid gift *inter vivos* has

no reference to the future, but is one which goes into immediate and absolute effect. | (2 *Kent's Com.* 438.)

The precise distinction between a gift *inter vivos* and *mortis causa*, as is correctly said in *Bedell* v. *Caryl*, (33 *N. Y. Rep.* 584,) is that in the one case the title passes immediately to the donee on delivery, and the donor has no more right to the property than any other 'person; in the other the title does not pass immediately, but it is a conditional gift, to take effect only on the death of the donor, who, in the meantime, has the power of revocation, and may resume and annul the gift.

But it is unnecessary further to discuss this point, since the court put the case upon the ground, and only sustained the gift as a good one *mortis causa,* and it remains to be considered whether this can be upheld. On reflection and a careful review of the authorities, I am satisfied that the learned judge, before whom the cause was tried, fell into an error which requires us to reverse the judgment rendered by him.

It is justly said by Chancellor Kent, that the English law on the subject of these gifts is derived wholly from the civil law; and yet it is certain that in the course, and as the result of many adjudications, both in England and this country, the rules of the civil law on this subject have been very considerably modified, and this as well in the direction of relaxing as of restricting the Roman law. Thus by the code of Justinian, such a gift was required to be executed in the presence of five witnesses. We demand no such strictness, for the testimony of a single witness, unchallenged and uncontroverted, will establish it. On the other hand, it is said by Vinnius that it is not necessary that the donor should be in imminent danger of death, but it is enough if he be moved by the general apprehension of death as the common lot of humanity. As a result of this principle, it is said by the civil law to be a good *donatio mortis causa* ⸱if a man, about to set forth on a long journey, and contemplating the

Irish *v.* Nutting.

perils of the way, makes a conditional gift of property to take effect in favor of another, in case of his never returning. (*Tom. Law Dic. tit. Donatio Mortis Causa.*) But no such rule is recognized by the common law, and the general drift of the authorities not only requires the gift to be made in the apprehension of death, but in the last illness of the donor. (*Blount* v. *Burrow,* 1 *Ves. Jr.* 546.) So also, by the civil law, delivery was not necessary to the validity of such a gift. By our law there must not only be a delivery, but it must be uninterrupted to the time of the donor's death. Again, by the Roman law any kind of property might be the subject of a *donatio mortis causa,* but the law of England restricts such gifts solely to personal estate. There are other diversities, but these are sufficient to show that cases following or founded solely on the civil law must be received cautiously, if not wholly rejected, as having no controlling authority with us. Thus when Chancellor Kent, in defining such gifts, says, it is essential that the donor make them in his last illness, or in contemplation or expectation of death, and with reference to their effect after his death, he gives a definition entirely supported by English decisions; but when he adds that the apprehension of death may arise from infirmity or old age, or from external and anticipated danger, he superadds elements for which alone the Digest is cited as authority, and which can not, to the extent of the rule as thus defined, be supported by any case in the English or American reports. After all the attempts at a definition, which shall be at the same time brief and comprehensive, I think it will be found that the one given by Lord Cowper, in the earliest case reported in the English books, is the most satisfactory. A gift of this description is, in his words: "When a man lies in extremity, or being surprised with sickness, and not having an opportunity of making his will, but lest he should die before he could make it, gives with his own hands his goods to his friends about him." "This," he adds, "shall operate as a legacy, but if he recover, then shall the property thereof revert to

him." (*Hedges* v. *Hedges, Prec. Ch.* 249.) This definition, with some modifications in respect to an approaching peril, and in respect to the severity and extent of the sickness, and its nearness to the hour of dissolution, concerning which there is some diversity in the decisions, has been adopted and approved by most of the elementary writers, and followed by the strong current of authority, from that day to this. (*See Story's Eq. Jur.* § 507 ; 1 *Wms. Ex'rs,* 651; 1 *Pars. on Cont.* 201; *Prince* v. *Hazleton,* 20 *John.* 502 ; *Harris* v. *Clark,* 2 *Barb.* 94 ; *Weston* v. *Hight,* 5 *Shep.* 287 ; *Wells* v. *Tucker,* 3 *Bin.* 366.) The modification of this rule, as I have suggested, relates mainly to the nearness of the approach of death, and I think there will no case be found where such a gift is upheld, in which there was not either peril of death from some cause imminent and impending, or the conceived near approach of natural death. It is not indeed necessary that the party should be *in extremis,* according to some of the earlier cases, but the gift will be presumed to be in contemplation of death, when the donor is on his death bed, or languishing in what proves to be his last illness.

I do not think it would be profitable to go through with a discussion of all the authorities both in England and in this country, where gifts of this description have been the subject of adjudication. After an examination of most of those that have been cited by the counsel for the respective parties, and some that had escaped their attention, I find as the result, that although circumstantially differing, they concur in establishing the general principle I have stated above, in respect to the imminency of the foreseen peril, or the apprehended approach of death from an existing sickness, which at least proximately proves fatal. The case most strongly relied on by the counsel for the plaintiff, to uphold this gift, (*Nicholas* v. *Adams,* 2 *Whart.* 17,) is not in conflict with the general current of authority. The gift there was by one on his sick bed, laboring under an illness from which death

Irish *v.* Nutting.

ensued within fourteen days from the delivery of the property, which was clearly intended to be bestowed as a dying legacy on the donee. All the court decided in the case was, that in order to constitute a good *donatio mortis causa*, it was not necessary that the donor should be in such extremity as is required to give effect to a nuncupative will, and that the subsequent execution of a will bestowing all his property on other beneficiaries, does not divest the right of the donee under the prior gift. The case is entirely consistent with the whole current of authorities which sustain such gifts as the donations of languishing and dying men. In view of the decisions, and the principle which runs through them all, I think it is impossible to maintain the gift in this case as a *donatio mortis causa*. The element of illness, in any degree, does not enter into the case, nor does it come within the category of the conceived near approach of death from an impending or apprehended peril. The alleged donor was in good health, many hundreds of miles from the seat of war, and if he "snuffed the battle, the thunder of the captains and the shouting," it was indeed "afar off" — too far to give any one not utterly craven hearted the least apprehension or disturbance. The only expression he made, having any relevancy to a possibly expected peril, was, that he was going to a dangerous place, and might never return. So it is dangerous to leave home on a railroad journey, or a steamboat excursion, or to ride forth after a pair of spirited horses; but no one would think either of these such an impending peril as to justify a man in giving away his earthly goods, under the conception that death was near at hand, if not already knocking at the door. In short, a vague and general impression that death may occur from those casualites which attend all human affairs, but which are still too remote and uncertain to be regarded as objects of present contemplation and apprehended danger, is not sufficient to sustain such a gift as the one which is claimed in this case. The party must be in a condition to fear approaching death from a proximate and

impending peril, or from illness preceding expected dis-
solution.

I am of opinion that the judgment should be reversed,
and a new trial granted, with costs to abide the result.

[ONONDAGA GENERAL TERM, January 2, 1867. *Bacon, Mullin* and *Foster,*
Justices.]