Ransom, S.
—On the 10th day of May, 1886, the deceased made a will disposing of her entire property. At the time of its execution, she had on deposit to her credit in the North River Savings Bank, $1,062.75. At this time, the deceased had no money to meet incidental expenses about the house and had to borrow. Shortly after the execution of the will, the decedent procured from the bank a receipt for the full amount, which she signed. After it had been signed, and on the same day, Mr. Parsell, the secretary of the bank, called on decedent with the pass-book and receipt, and conversed with her respecting the payment of the account, during which decedent said she “wanted to draw that money that was in the bank, for Katie Smith, excepting a few odd dollars to pay little expenses around the bed.” Mr. Parsell thereupon called several persons (among them Katie Smith) to witness the declaration of decedent, but she refused to repeat it in their presence. Mr. Parsell was not satisfied to pay the money unless the directions were so given, but gave the pass-book and receipt to the decedent, who placed them in her dress. On or about May 12th, Katie Smith consulted an attorney, and was advised that Mrs. O’ G-ara should give her such part of the account or amount as she (decedent), wished to make her a present of in the presence of witnesses, after the money had been drawn from the bank. Katie Smith did not follow these instructions.
On or about May 19, 1886, decedent expressed her intention of dividing the money in the North River Bank, and dictated a paper showing the disposition she wished made of the fund.
On May 25th, Katie Smith, delivered the pass-book and receipt to Wm. P. O’Oonnor, who in turn delivered the same to Wm. J. Lardner; and the latter on the 28th day of May, acting as attorney (for whom does not appear), withdrew the said fund and surrendered the pass-book and receipt. Lardner delivered the money to O’Connor who retained it until after the death of testator, which occurred May 30, 1886. '
Thus it seems there is abundant proof of an intention on the part of decedent to provide for Katie Smith, to some extent; there is also sufficient proof in the case to warrant a finding that she intended to donate to Katie Smith, some part at least, of the specific. sum, which is the subject of *739 this controversy. But testimony of intention alone is not sufficient to uphold a gift. A gift does not become effectual without delivery. The proof as to each element necessary to constitute a valid gift must be satisfactory; a doubtful case will not do. Doty v. Willson, 47 N. Y., 585.
It will be observed that in the present case, the referee in his opinion (p. 6), states that “As to this question of atrans-. fer of title the testimony is very meagre and unsatisfactory.”
Again (on page 8), the referee in criticizing the testimony of the only witness as to actual delivery says: “Witness is evidently in doubt.”
This according to the referee’s opinion, an indispensable requisite to substantiate a valid gift, was lacking.
It is somewhat difficult to discover whether the facts in this case are sought to establish a gift {causa mortis or one inter vivos). If the beneficiary regarded it as one causa mortis, she had no right to exercise dominion over it prior to the death of the donor, which she did by causing the funds to be withdrawn on or about the 28th day of May, 1886, several days before decedent’s death. If a gift causa mortis is sought to be established by the testimony, and such dominion was proper, it could only have been as agent of decedent, which fact would rebut any presumption, which might otherwise arise from her possession of the insignia of title. It could hardly have been intended by decedent as a gift inter vivos, for apart from the fact that deceased was at the time in extremis, it is conceded on all sides she intended that the expenses about her bed were to be paid out out of the money drawn. This period was necessarily indefinite; she might have lived a year, and ah this time, it is quite clear she intended this fund should be used to defray the expenses of her illness.
Possession of the receipt and bank book by Katie Smith is not to be deemed prima facie evidence of a gift. She was in the confidence of the decedent, had access to her papers, appears to have had charge of the household and its expenditures. The law appears to attach a suspicion to such possession, and it is certainly not sufficient of itself, in the absence of proof of delivery, to support a gift. Conklin v. Conklin, 20 Hun, 281.
But apart from the question of the defect or lack of proof as to delivery, a very grave question arises, assuming proof of delivery, whether the reservation by the donor of some portion of the fund for her own purposes, does not render the transaction invalid as a gift.
The decedent did not part absolutely with the control over the whole fund; according to the testimony of the claiming donee, at least so much was to have been reserved, as would suffice to buy a plot for burial and the expenses *740 around the bed. “An absolute gift requires a renunciation by the donoy, and an acquisition by the donee, of all interest in and title to the subject of the gift. A portion cannot bo retained and the remainder disposed of.” Irish v. Nutting, 47 Barb., 383.
A further requisite to give effect to the donation (causa mortis), is, deceased should, at the time of delivery, not only part with the possession; but, also, with the dominion over the subject of the gift. Huntington v. Gilmore, 14 Barb., 243; 118 Mass., 154; Williams on Executors, vol. 1, 649 (6th Am. ed.).
In illustration of the rule as above set forth, the case of Reddell v. Dobree (10 Sim., 244), is given in Williams on Executors, as follows: “A, the deceased, being in a declining state of health, delivered to Charlotte R., a locked cash box, and told her to go at his death to his son for the key; and that the box contained money for herself and entirely at her disposal after he was gone, but that he should want it every three months whilst he lived. The box was twice delivered to the deceased by his desire and he delivered it again to Charlotte R., and it was in her possession at his death. The box was afterwards broken open by her and contained a check for £500, drawn by a third party in favor of the deceased, and enclosed in a cover, indorsed with the name of Charlotte R., and the key (which the son of the deceased bad refused to deliver to her), had a piece of bone attached to it, with her name written on it. Sir L. Shad-well, V. C., held that there was no donatio mortis causa, for that there was nothing more than that, to a certain extent, the deceased put Charlotte R., in possession of the box, but retained to himself absolute power over its contents.
Again in the case of Young v. Young (80 N. Y., 422), the court says: “ The reservation of interest on the bonds to the donor was for an uncertain period, i. e., during the life-time and until his death, and it was impossible to determine the precise proportion of the money secured by the bonds, to which the donee was entitled.”
In that case, the donor placed coupon bonds in envelopes, indorsed with a memorandum to the effect that a specific number of the bonds belonged to certain of his sons, but that the interest on the same was owned and reserved by him during his life. His intention to give the bonds to his sons was amply proven by oral declarations to that effect. Ra padlo, J., writing the opinion, says that he can conceive of but one way in which such a transaction could be effectuated as a gift, viz.: ‘' By an absolute delivery of the security which is the subject of the gift to the donee, vesting the entire legal title and possession in him, on his under *741 taking to account to the donor for the interest which he may collect thereon.”
In the case at bar, no equivalent agreement can be claimed to have been made by Katie Smith, as she swears that she asked to have the bank credit her with what might be left after paying for expenses around the bed.
I have stated, in opening that I was of opinion that there was sufficient proof adduced to warrant a finding that decedent intended to make some provision for Katie Smith out of the money deposited in the North River Savings Bank. Her intention must have been vague. The conversation with Mr. Parsell, declared that she wanted to give her all the money there, except a few dollars for expenses around the bed; but when informed of the formalities required by law to effectuate such intention, she declined to observe them. The law is that, to establish a gift, there must be delivery of the subject matter, accompanied by words characteristic of the intention. The interview with Mr. Parsell establishes an intention to give some intermediate amount to Katie Smith, but not the will to take the steps necessary to consummate that intention. There is proof that later she modified her intention materially as to the amount of money she wished to donate Katie Smith, and the referee so found.
Both the doner and the donee were fully aware of the requirements of the law on the subject; the former by the interview with Mr. Parsell, and the latter by a subsequent interview with an attorney on the matter.
It must be borne in mind that there is no direct evidence of delivery; the proof in that regard is purely inferential. The referee considers the intention thus manifested, together with possession by Katie Smith, sufficient to warrant the inference of delivery, and relies upon the case of Bedell v. Carll (33 N. Y., 581), as justifying the inference.
In that case, the court held simply that “ production of the note (which was the subject of the gift), indorsed in blank, was ample proof of delivery.” It is to be noted that the court adhered to the ordinary rule in respect of title to commercial paper.
The case of Bedell v. Carll, so far as the question of a gift is concerned, is clearly distinguishable on the facts from the case at bar; there, proof of actual delivery was made; here, there is an utter absence of such clear proof as the law requires.
I conclude, therefore, that on the facts in this case, Katie Smith has no title to the money in question. In all other respects, the report of the referee is confirmed.