WALTER C. BUTLER, Plaintiff, *v.* EDWARD H. SHERWOOD, Individually and as Administrator, etc., of ELLA F. SHERWOOD, Deceased, Defendant.

(Supreme Court, Cortland Trial Term, February, 1921.)

Deeds — when plaintiff entitled to judgment declaring the instrument null and void — actions — Statute of Wills — gifts.

By a writing in the form of and acknowledged as a deed, the grantor quit-claimed to her husband, to whom the instrument was delivered on the day of its date, all real estate of which she should die seized, and also assigned to him all of her personal property. By the instrument, she reserved full control and dominion over her property, and it was left entirely discretionary with her whether at her death anything should be left to her grantee. *Held,* that in an action by the brother and only next of kin of the grantor, to have the instrument annulled on the ground that it was an attempt by the grantor to dispose of her property in a form and manner con-

trary to the Statute of Wills, plaintiff was entitled to a judgment declaring the instrument null and void.

The instrument, in the circumstances disclosed, can be sustained neither as a gift *inter vivos* nor as a gift *causa mortis*.

ACTION to nullify an instrument in the form of a deed.

Levi R. Chase, for plaintiff.

Willard A. Rill, for defendant.

TUTHILL, J. The plaintiff, a brother of Ella F. Sherwood, deceased, and her only heir at law and next of kin, brings this action to nullify an instrument made by Mrs. Sherwood to her husband, the defendant Edward H. Sherwood, January 25, 1916. The instrument is in the form of a deed, acknowledged and witnessed, and recites that the same is in consideration of one dollar, love and affection, and other good and valuable considerations, and remises, releases and forever quitclaims to her husband, the defendant, all her real estate wheresoever situate in the United States of America, of which she shall die seized, and also assigns to him all of her personal property of whatever name or kind the same may be and wheresoever situate. Continuing, the instrument provides: "This conveyance and transfer are made upon the condition that the party of the second part, my husband, survive me and the same is intended to vest and take effect only upon my decease, and until said time, the same shall be subject to revocation upon the part of the party of the first part." It also provides that the second party shall pay five dollars a week to the stepfather of Mrs. Sherwood during his lifetime if he survives her. His death, however, occurred before Mrs. Sherwood's, she having died January 6, 1920.

The plaintiff assails the instrument and asserts that

it was an attempt by the decedent to dispose of her property in a form and manner contrary to the Statute of Wills, and is, therefore, void. The evidence shows that the decedent was a woman of strong mind and determination and adverse to making a will, having been a party to a contest under a will of her former husband; that at the time she executed the instrument in dispute, she was suffering from cancer and immediately thereafter submitted to an operation receiving relief therefrom, but died of the same disease about four years later.

The plaintiff also disputes the delivery of the instrument, but I am satisfied from the evidence that it was delivered by Mrs. Sherwood to her husband immediately after it was executed and on the day it bears date.

The evidence also shows, otherwise than by the document itself, that the decedent intended her husband at her death should be the sole recipient of her bounty to the exclusion of her kin. The question is, whether she has legally accomplished her purpose. The way was simple but it was not Mrs. Sherwood's way. She proposed to contravene the conventional manner of testamentary disposition and effectuate her purpose by deed. That a person may ordinarily do as they wish with their own is conceded, but the manner of accomplishing the same is subject to limitations.

A careful reading of the clause quoted above is convincing that the grantor did not intend to convey any present estate, title or possession to the grantee. Under the instrument it was left entirely discretionary with her whether at her death anything should be received by the grantee. She reserved full control and dominion over her property. She used most apt language to retain the title and possession as she said

"the same is intended to vest and take effect only upon my decease, and until said time, the same shall be subject to revocation." She withheld the vesting which gives a fixed and indefeasible right to property; also she withheld possession as she gave no absolute present or future right of enjoyment. An estate is vested in possession when there exists a right of present enjoyment; and is vested in interest when there is a present fixed right of future enjoyment. Under the instrument the grantee was given neither. He was given nothing which he could enforce as against the grantor nor those claiming under her. She could have conveyed or transferred any or all of her real or personal property and given good title as nothing had vested in the grantee or passed to him under the instrument. He had not even a prospective interest legal or equitable, present or future, in any of the property which was not extinguishable by the grantor. In legal effect the instrument made no change in title during Mrs. Sherwood's lifetime. The property remained hers for all purposes until she died. The instrument by its terms was ambulatory and conferred no present rights and was to take effect on the grantor's death, but was shorn of the requisite formalities to make it a testamentary disposition. The effect of such an instrument is well expressed by the court in *Turner* v. *Scott,* 51 Penn. St. 126, 134: "The doctrine of the cases is, that whatever the form of the instrument, if it vest no present interest but only appoints what is to be done after the death of the maker, it is a testamentary instrument. It signifies nothing that the parties meant to make a deed instead of a will." See, also, *Boon* v. *Castle,* 61 Misc. Rep. 474; *Evans* v. *Evans,* 69 id. 86; *Leonard* v. *Leonard,* 145 Mich. 563; *Leaver* v. *Gauss,* 62 Iowa, 314; *Aldridge*

v. *Aldridge,* 202 Mo. 565; *Wilson* v. *Wilson,* 158 Ill. 567.

The defendant contends that the instrument may be considered a gift. Certainly it cannot be sustained as a gift *inter vivos* as the alleged donor did not divest herself of the property and the donee acquired no legal title to it. It did not take effect immediately and irrevocably during the donor's lifetime. It was not executed and it required a further condition, the death of the donor, to make it complete, as the instrument expressly stipulated that it should not take effect until the grantor's death. 20 Cyc. 1192. Neither do I believe the instrument can be sustained as a gift *causa mortis.* It cannot as to the decedent's real estate for the decided weight of authority is that "Real estate, in the very nature of things, cannot be the subject of gift *causa mortis.* That species of gift is confined strictly to personal property." 20 Cyc. 1242, and cases cited in note 56; Thorn. Gifts & Adv. 373, § 370; 3 Pom. Eq. Juris. (4th ed.) 2626, § 1148; *Irish* v. *Nutting,* 47 Barb. 370, 385.

As to the personal property I do not believe the instrument can be construed as a gift *causa mortis.* In either form of gift the donor must surrender the possession and dominion of the property to the donee. *Ridden* v. *Thrall,* 125 N. Y. 572, 579. This, as has been observed, was not done. The donee was to remain in control until her death, as there was no vesting or taking effect until the happening of that event. Also in gifts *causa mortis* more is needed. " The gift must be made under the apprehension of death from some present disease or some other impending peril, and it becomes void by recovery from the disease or escape from the peril. It is also revocable at any time by the donor, and becomes void by the death of the donee in the lifetime of the donor. It is not needful that the

Supreme Court, February, 1921.    [Vol. 114.

gift may be made *in extremis* when there is no time or opportunity to make a will. In many of the reported cases the gift was made weeks, and even months, before the death of the donor when there was abundant time and opportunity for him to have made a will." Earl, J., in *Ridden* v. *Thrall, supra,* 579.

Diligent search of counsel has failed to find an authority where several years have elapsed between the making of a gift and the death of the donor. While there is no prescribed time which must intervene, the longest time as shown in any case cited where the gift was held valid is a period of five months (*Grymes* v. *Hone,* 49 N. Y. 17), the court saying (p. 20): "But at this time it is generally agreed that, to constitute such a gift, it must be made with a view to the donor's death from present illness or from external and apprehended peril. It is not necessary that the donor should be *in extremis,* but he should die of that ailment. If he recover from the illness or survive the peril, the gift thereby becomes void; and until death it is subject to his personal revocation. (2 Kent, 444, and cases cited; 2 Redfield on Wills, 299 *et seq.;* 1 Story Eq. sec. 606, etc., notes and authorities.)" Also in *Williams* v. *Guile,* 117 N. Y. 343, the court held, as expressed in the head note: "it is sufficient if it appears the gift was made during the existence of a bodily disease, or illness which imperiled the donor's life, and when he must be deemed to have had his death in view, and that death occurred from the disorder or illness." In that case the donor died about six weeks after making the gift.

In the present case Mrs. Sherwood, shortly previous to making the instrument, was advised to submit to an operation and no doubt knew the nature of her malady and executed the deed contemplating she might not recover from the operation. This plainly appears from

the evidence of one of defendant's witnesses who stated that before Mrs. Sherwood went to the hospital in Binghamton " she said she was waiting for some papers to come back to sign before she went, because if anything happened to her she wanted things fixed so if she didn't come back everything would be as she wanted it." She did, however, return from the hospital much improved and there was no recurrence of the disease for about two and a half years. During this period Mrs. Sherwood was about town, transacted business affairs and went on long automobile journeys, and otherwise indicated she was in a fairly normal condition. In June, 1919, she had a second operation and died from the ailment in January following. Under the circumstances I believe it should be held that there was such a recovery from the illness and the impending peril of the first operation as to defeat the gift which, if made, was approximately four years before the donor's death. The situation is not entirely unlike that often referred to as a soldier's gift made when he enlists upon condition that if he never returns from the war it should become absolute, which has been held invalid as a *donatio mortis causa*. In *Irish v. Nutting*, 47 Barb. 370, 387, the court says: " In short, a vague and general impression that death may occur from these casualties which attend all human affairs, but which are still too remote and uncertain to be regarded as objects of present contemplation and apprehended danger, is not sufficient to sustain such a gift as the one which is claimed in this case. The party must be in a condition to fear approaching death from a proximate and impending peril, or from illness preceding expected dissolution." See, also, *Sheldon* v. *Button*, 5 Hun, 110; *Dexheimer* v. *Gautier*, 34 How. Pr. 471; *Gourley* v. *Linsenbigler*, 51 Penn. St. 345. Professor Pomeroy in commenting upon these

decisions says, in his opinion, they are clearly correct. "If such gifts were valid as donations *causa mortis,* on the same ground gifts made at any time by persons having a chronic disease, although in no immediate danger would be equally good because their lives are more likely to be shortened than those of persons in health." 3 Pom. Eq. Juris. (4th ed.) 2653, 2654. The same author says (p. 2650): "A donation *causa mortis* is a gift absolute in form, made by the donor in anticipation of his speedy death, * * *." Thornton on Gifts and Advancements (pp. 41, 42), speaking of the effect of a recovery from illness, says: "The question is one that necessarily arises, what is a recovery; or what is such a recovery as will defeat the gift? This is difficult to answer for there is no light upon the subject. A man who is in imminent peril because of sickness or disorder that possesses him is usually confined to his bed; and if he so far recovers as to leave his room and his house, and to attend to some of his daily affairs, it cannot be said that the gift is unrevoked. A man with a chronic disease may be afflicted for years with his disorder, and may well know and consider that he never will recover; and yet a gift made while he is going about his usual and daily occupations could not be considered as made during his last illness, although he might die within the next twenty-four hours. A man having the heart disease severely is usually in imminent peril of death, and still performs all the avocations of a well man; yet a gift made by him as a *donatio mortis causa* would not be valid though he were stricken and die within the next three minutes, unless, at the time of the gift, he had clear premonition of his approaching death."

It would not seem, therefore, a gift *causa mortis* is sustainable where the donor dies from a disease which may be lingering for years and from which

there is or may be from time to time a substantial recovery. "A vague and general apprehension of death from the mortality of man will not suffice, there must be an apprehension arising from some particular sickness, peril or danger." 20 Cyc. 1236.

From the foregoing it follows that judgment should be directed declaring null and void the instrument executed by the decedent on January 25, 1916, with costs against the defendant individually.

Judgment accordingly.