## THIRD DEPARTMENT, JULY, 1939.

### (July 11, 1939.)

LUCY M. B. BENSON, as Committee of the Person and Estate of MARGARET J. BENSON, an Incompetent, Appellant, *v.* NELLIE CARROLL and WILLIAM P. BRENNAN, Respondents.

Judgment affirmed, without costs.

Crapser, Bliss and Heffernan, JJ., concur; Hill, P. J., dissents with an opinion.

HILL, P. J. (dissenting). In August, 1937, Margaret J. Benson was declared incompetent and Lucy M. B. Benson was appointed committee of her person and property. The committee appeals from a judgment dismissing her amended complaint in an action brought to rescind and set aside a transfer of property made by Miss Benson in March, 1936, to the defendant Carroll, and a transfer in March, 1937, from Carroll to the defendant Brennan.

For more than fifty years Nellie Carroll and Margaret J. Benson had been close friends, and for about ten years before the 1936 conveyance they had resided in a portion of the property conveyed. Miss Benson paid all living expenses.

Just prior to the conveyance the doctor who was attending her for influenza discovered that she was suffering from cancer, and recommended immediate operative treatment. Miss Carroll describes the transactions that preceded the conveyance: " Well Dr. Breault had said to her, he said ' Have you got every thing straightened up, Miss Benson? Because with the knife there is always more or less danger ' he says ' you may come out all right and every thing will be all right ' he says ' but still it is well enough if you had any affairs you want to settle to settle it.' She said ' well I haven't very much to settle ' she says ' this house is to go to Nellie.' Dr. Breault heard her say that. I said ' Oh, no, no, no, Margaret. Because there will be a fight if you do.' She said, Mr. Wertime used to be her lawyer and he was up in the country, so she called Mr. Conboy and had him come down and draw up, make the, draw up the deed, or draw whatever paper I do not know whatever it was." Miss Benson recovered from the operation. Miss Carroll declined to reconvey the property, and transferred it to her pastor, the defendant Brennan. He gave no consideration other than a promise to pay to the defendant Carroll during her life $700 net each year in quarterly installments of $175. The incompetent is now occupying, through sufferance, rooms on the second floor of the property. Brennan receives $1,200 a year from the remaining portion of the property which he leases. The lower court has found that there was a gift *inter vivos* and that, therefore, it is irrevocable. The opinion states: " The inference that she made the transfer in contemplation of death seems perfectly sound. It does not follow, however, that such fact alone necessarily made the transaction a gift *causa mortis*. A gift *inter vivos* may be made under the same circumstances. The greater weight of authority is to the effect that real estate cannot be the subject of a gift *causa mortis*."

Text writers and the authors of substantially all of the popular digests join in stating that real estate may not be the subject of a gift *causa mortis*. My attention has not been called to a decision of the court of last resort in this State directly upon this question. In *Curtiss* v. *Barrus* (38 Hun, 165) it was decided that a farm could be the subject of a gift *causa mortis*. The opinion stated: " The chief distinction between a gift *inter vivos* and a gift *causa mortis* is that the former is irrevocable, while the latter is revocable, and the donor's recovery from peril operates *per se* as a revocation of the gift." The weight of authority in trial and intermediate appellate courts is to the contrary.

Under the Roman law, any kind of property might be the subject of a gift *causa mortis*, but under the English law, such gifts were restricted solely to personal property. (*Irish* v. *Nutting*, 47 Barb. 370, 385.) The genesis of the rule in England is understandable when we call to mind that the ancient method of transferring a freehold interest in land was by feoffment accompanied by livery of seizin, and that it was necessary, in order to deliver possession, that the donor or grantor must have left the land vacant, as otherwise there could be no livery of seizin. (3 Holdsworth's History of the English Law [Little Brown & Co. 1923], pp. 221, 222.) Present day conveyances of real property differ little, if any, from transfers of personal property. A deed represents the land it conveys as much as a share of stock does the tangible property of a corporation, or a written chose in action the amount due thereunder. The recovery of the donor in a gift *causa mortis* works *per se* a revocation of the gift. (*Ridden* v. *Thrall*, 125 N. Y. 572; *Williams* v. *Guile*, 117 id. 343; *Grymes* v. *Hone*, 49 id. 17.) To establish an

*inter vivos* gift, the donor must have intended to have the gift take effect *in præsenti*, irrevocably and unconditionally, whether he lived or died. The evidence in this case will not sustain the inference that this aged woman, now incompetent, intended, in the event of her recovery, to spend her remaining years in poverty. The surroundings indicate that she expected, if she survived, that her friend of half a century, the beneficiary of her largess for ten years, would immediately reconvey.

I favor a reversal.